IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 14-96-GF-BMM-14 |
| Plaintiff/Respondent, | |
| vs. | ORDER |
| EDUARDO OCEGUEDA-RUIZ, | |
| Defendant/Movant. | |

This case comes before the Court on Defendant/Movant Eduardo Ocegueda-Ruiz's motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. (Doc. 839.) Ocegueda-Ruiz is a federal prisoner proceeding pro se.

On April 20, 2017, the Court ordered the Clerk of Court to retain a qualified translator to translate those portions of Ocegueda-Ruiz's § 2255 motion that are written in Spanish. (Doc. 841.) That translation was provided on April 27, 2017, (Doc. 842), and was reviewed in conjunction with the original motion.

On February 21, 2018, the Court gave Ocegueda-Ruiz an opportunity to

supplement his original motion as to his interpreter (Claim Three).[1]  (Doc. 856.)

Ocegueda-Ruiz responded on March 26, 2018. (Doc. 859.) This response will be

reviewed in conjunction with his original petition.

## I. Preliminary Review

The motion is subject to preliminary review before the United States is

required to respond.  The Court must determine whether "the motion and the files

and records of the case conclusively show that the prisoner is entitled to no relief."

28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255

Proceedings for the United States District Courts.

A petitioner "who is able to state facts showing a real possibility of

constitutional error should survive Rule 4 review."  *Calderon v. United States Dist.*

*Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolas*") (Schroeder, C.J.,

concurring) (referring to Rules Governing § 2254 Cases).  It remains the duty of

the court "to screen out frivolous applications and eliminate the burden that would

be placed on the respondent by ordering an unnecessary answer."  Advisory

Committee Note (1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory

Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

## II. Background

---

[1]  This order was translated into Spanish and both the Spanish and English versions
were mailed to the petitioner.  (*See* Doc. 858.)

The government filed a criminal complaint on September 29, 2014, against Ocegueda-Ruiz, along with four co-defendants, charging conspiracy with intent to distribute methamphetamine, 21 U.S.C. §§ 846, 841(a)(1). (Doc. 2.) A grand jury indicted Ocegueda-Ruiz—along with 19 co-defendants—on 24 counts, on October 20, 2014. Seven of these counts applied to Ocegueda-Ruiz, including: Count 1: conspiracy to possess with intent to distribute and to distribute methamphetamine, 21 U.S.C. § 846; Count 5: possession with intent to distribute methamphetamine, 21 U.S.C. § 841(a)(1); Count 14: conspiracy involving firearm and drug trafficking crime, 18 U.S.C. § 924(o); Count 20: possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. §§ 2, 924(c)(1)(A); Count 21: felon in possession of firearm, 18 U.S.C. § 922(g)(1); Count 22: illegal alien in possession of firearm, 18 U.S.C. § 922(g)(5);[2] and Count 24: illegal reentry, 8 U.S.C. § 1326(a), (b)(2). (*See* Docs. 26, 27.)

Counts 1 and 5 carried a mandatory minimum ten years imprisonment upon conviction. The government filed a notice pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 851(a), to increase the potential penalty for Ocegueda-Ruiz for conviction

---

[2] The caption of the Indictment erroneously cites 18 U.S.C. § 922(g)(1)—as opposed to (g)(5)—for Count 22. However, the correct statutory citation is included in the body of Count 22. *See United States v. Pazsint*, 703 F.2d 420, 423 (9th Cir. 1983) ("[I]t is well established that the caption is completely surplusage and does not control the body of the indictment."). That same error is made in the caption of the PSR. (*See* Doc. 750 at 2.)

under Counts 1 and 5 to a mandatory term of life imprisonment.  (Doc. 408.)
Count 20 carried a mandatory consecutive five-year term.

The Court held a two-day jury trial on March 2, 2015, on Counts 1, 5, 20, 21
and 22.[3]  (*See* Min. Entries, Docs. 514, 520.)  The jury convicted Ocegueda-Ruiz
on all counts. (*See* Verdict, Docs. 526, 527.) The Court sentenced Ocegueda-Ruiz
on June 3, 2015, to a custodial term of the mandatory minimum of life on Counts 1
and 5, concurrent; 120 months on Counts 21 and 22, concurrent; and the
mandatory minimum of five years on Count 20, consecutive. (Judg., Doc. 740.)
Ocegueda-Ruiz appealed. (Notice, Doc. 742.) The Ninth Circuit affirmed his
convictions and sentence on October 17, 2016. (Memo. Dispo., Doc. 830.) As
Ocegueda-Ruiz sought neither rehearing nor certiorari, his conviction became final
on January 15, 2018.  *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012).  He timely
filed his § 2255 motion on April 11, 2017. 28 U.S.C. § 2255(f)(1).

### III. Claims and Analysis

Ocegueda-Ruiz claims that counsel provided ineffective assistance of
counsel in various respects. *Strickland v. Washington*, 466 U.S. 668 (1984),
governs these claims. At this stage of the proceedings, Ocegueda-Ruiz must allege
facts sufficient to support an inference (1) that counsel's performance fell outside

---

[3]  Counts 14 and 24 were dismissed on the government's motion prior to trial.  (*See*
Docs. 454, 455.)

4

the wide range of reasonable professional assistance, *id.* at 687-88, and (2) that a reasonable probability exists that, but for counsel's unprofessional performance, the result of the proceeding would have been different, *id.* at 694.

### A. Claim One: Sentencing Enhancement and Procedure

#### 1. § 841 Enhancement and Proposition 47

First, Ocegueda-Ruiz claims trial counsel should have sought to have his prior felony convictions, upon which his § 841 enhancement relied, reclassified as misdemeanors under California law. California enacted Proposition 47 in November 2014, which, among other things, "permits previously-convicted defendants to petition the [state] court for a 'recall of sentence,' which, if granted, would effectively reclassify their qualifying felonies as misdemeanors." *United States v. Diaz*, 838 F.3d 968, 971 (9th Cir. 2016) (citing Cal. Penal Code § 1170.18(a)). Since his federal sentencing, Ocegueda-Ruiz successfully petitioned to reclassify two of his felony convictions—identified in paragraphs 1 and 2 of the government's § 851 notice, (Doc. 408 at 2)—as misdemeanors. (*See* Supr. Ct. of Cal., Min. Ors., Doc. 839-2 at 7-10.)

Ocegueda-Ruiz's present claim is foreclosed, however, by the Ninth Circuit's determination "that California's Proposition 47 . . . does not undermine a prior conviction's felony status for purposes of § 841." *Diaz*, 838 F.3d at 975. Even assuming counsel provided ineffective assistance of counsel for failing to

pursue this issue (given that *Diaz* was not decided until after Ocegueda-Ruiz's conviction and sentencing), Ocegueda-Ruiz suffered no prejudice from counsel's failure in light of *Diaz*. *See Knowles v. Mirzayance*, 556 U.S. 111, 121-22 (2009) (rejecting the argument that counsel is ineffective for failing to raise an argument if there is "nothing to lose").

### 2. Prior Conviction No. 3 Not a Drug Trafficking Offense

Second, Ocegueda-Ruiz alleges that counsel provided ineffective assistance of counsel for failing to object to the government's § 851 notice on the grounds that count one in the prior conviction numbered "3," (*see* Doc. 408 at 2), "does not categorically qualify as a drug trafficking offense." (Doc. 839-1 at 1.) Paragraph 3 of the § 851 notice reads as follows:

> Sale/Transportation/Offer to Sell Controlled Substance (Heroin) (Count 1), and Possession for Sale of a Controlled Substance (Heroin) (Count 2)—committed on May 13, 2011, and convicted of both Count 1 and 2 on June 3, 2011. Case No. BA384524, in the Superior Court of the State of California, County of Los Angeles (Attached as Exhibit 3).

(Doc. 408 at 2.) Ocegueda-Ruiz's argument lacks merit.

The enhancement under § 841(b)(1)(A) does not require that the prior conviction be for a drug trafficking offense, but merely a "felony drug offense." This case can thus be distinguished from those, such as enhancements under USSG §2L1.2(b)(1)(A), that require a prior "drug-trafficking offense." Second, a mandatory life sentence under § 841(b)(1)(A) requires only two prior convictions.

The convictions outlined by the government in paragraphs 1 and 2 remain valid for the purposes of § 841. *See* Section III(A)(1) *supra*. Ocegueda-Ruiz would not be entitled to relief even if the prior conviction outlined in paragraph 3 did not qualify. Accordingly, Ocegueda-Ruiz suffers no prejudice from counsel's failure to raise this issue.

### 3. Infirmities under Rule 32(c)(2) and (e)(2), Fed. R. Crim. P.

Ocegueda-Ruiz next claims that "[t]he presentence investigator failed to adhere to 32(c)(2), (e)(2) (with or without an interpreter) of the federal rules of criminal procedure [sic]." (Doc. 839-1 at 2.) Rule 32(c)(2) requires that "[t]he probation officer who interviews a defendant as part of a presentence investigation must, on request, give the defendant's attorney notice and a reasonable opportunity to attend the interview." Rule 32(e)(2) states that "[t]he probation officer must give the presentence report to the defendant, the defendant's attorney, and an attorney for the government at least 35 days before sentencing unless the defendant waives this minimum period."

Ocegueda-Ruiz bases both challenges on "nonconstitutional sentencing errors that have not been raised on direct appeal." *United States v. Schlesinger*, 49 F.3d 483, 485 (9th Cir. 1994). He has waived these arguments. These arguments may not be reviewed under § 2255. *Id.*; *Hill v. United States*, 368 U.S. 424, 428 (1962) (collateral review not available for alleged violation of Fed. R. Crim. P.

32(a)); *United States v. McMullen*, 98 F.3d 1155, 1157 (9th Cir. 1996).

To the extent Ocegueda-Ruiz's claim can be construed as an ineffective assistance of counsel claim against his counsel,[4] it lacks merit. A PSR interview was not conducted in this case. (*See* PSR, Doc. 750 at ¶ 76.) The question of whether it was appropriate to waive the presentence report interview was discussed at Ocegueda-Ruiz's sentencing hearing. Defense counsel indicated that he did not think Ocegueda-Ruiz had a right to see the probation officer given the fact that Ocegueda-Ruiz faced a mandatory life sentence. (Sntg. Trans., Doc. 797 at 8.) Defense counsel went even further, stating that in light of the mandatory sentence, it may have even be appropriate to waive the PSR in its entirety. (*Id.*)

The Court lacked the ability to exercise its discretion in sentencing. Nothing uncovered in a PSR interview could have formed the basis to impose a lesser sentence. It was not unreasonable for counsel to waive the PSR interview and Ocegueda-Ruiz suffered no prejudice from counsel's decision. Ocegueda-Ruiz's second argument regarding notice of the PSR before sentencing proves equally

---

[4] In multiple pro se filings with the Court prior to sentencing, Ocegueda-Ruiz alleged that his "lawyer renounced [his] right to an interview with the Probation official 'PSR'". (*See* Doc. 733-1 at 3 (translation).) On May 22, 2015, Ocegueda-Ruiz sent another letter to the Court indicating that he had not "seen [his] probation officer" and that his "lawyer renounced the rights the law afford[ed] him]. For example, [he] didn't have the opportunity to review [his] Pre-Sentencing Report [sic] in person with [his] lawyer nor have . . . a face-to-face interview with [his] Probation Officer." (Doc. 733-2 at 6 (translation).)

unpersuasive.  The Court sentenced Ocegueda-Ruiz on June 3, 2015. Counsel

received the draft PSR on April 20, 2015, and shared it with Ocegueda-Ruiz.  (*See*

Sntg. Trans., Doc. 797 at 5.)

Ocegueda-Ruiz's first claim for relief is denied.

**B. Claim Two: Double Jeopardy[5]**

Ocegueda-Ruiz claims that his trial counsel provided ineffective assistance

for failing to object on double jeopardy grounds to his indictment, trial, and

sentencing on both Count 21: felon in possession of firearm, 18 U.S.C. §

922(g)(1), and Count 22: illegal alien in possession of firearm, 18 U.S.C. §

922(g)(5).  Both counts were based on his possession of two firearms on

September 26, 2014: a Springfield Armory, model XD-9, 9mm, semi-automatic

pistol with serial number XD100734, and a Springfield Armory, model XD-40, .40

caliber, semi-automatic pistol with serial number XD418550.  (*See* Indict., Doc.

26, 27 at 13; Final Jury Instr. Nos. 15-18, Doc. 524 at 19-23.)

Ocegueda-Ruiz correctly notes that the government previously has conceded

that "§ 922(g) states a single offense that supports a single conviction and

sentence, rather than multiple offenses that may be charged separately."  *United*

---

[5]   As part of his second claim, Ocegueda-Ruiz further argues appellate counsel
was ineffective for failing to challenge the sufficiency of the government's
evidence as to the "interstate commerce" element of both Counts 21 and 22 on
direct appeal.  Because that claim is directly related to his Rule 29 challenge under
Claim Five, it is discussed in that context.

*States v. Mavromatis*, 769 F.3d 1194, 1195 (9th Cir. 2014) (order) (citing *United States v. Munoz-Romo*, 989 F.2d 757, 758-59 (5th Cir. 1993)). In *Munoz-Romo*, like here, the defendant was convicted and sentenced for possession of the same firearm under both § 922(g)(1) and § 922(g)(5). 989 F.2d at 758. The Fifth Circuit held that Congress did not intend that "a convicted felon who is also a fugitive from justice, a drug addict, a mental defective, and an illegal alien, could be sentenced to five consecutive terms of imprisonment for the *same incident*, namely, the possession of a firearm." *Id.* at 759. Congress instead "intended to describe only a single crime that could be committed by seven types of offenders." *Id.*

The Ninth Circuit has not directly addressed the issue beyond the voluntary remand ordered in *Mavromatis*, *c.f. United States v. Keen*, 104 F.3d 1111, 1119-20 (9th Cir. 1996) (holding that a felon's possession of a firearm and ammunition in one, single transaction comprised only one offense under § 922(g)(1)); and in *United States v. Zalapa*, 509 F.3d 1060, 1062-65 (9th Cir. 2007) (holding that multiple convictions and sentences for a single firearm under 26 U.S.C. § 5861(d) "are multiplicitous" in violation of the Double Jeopardy Clause and remanding to the district court with instructions to vacate one of the two counts). Those circuits that have addressed multiple convictions under § 922(g) unanimously agree that it "cannot support multiple convictions based on a single firearm possession because

the allowable unit of prosecution is the incident of possession, not the defendant's membership in a class (or classes) of persons disqualified from possession." *United States v. Parker*, 508 F.3d 434, 440 (7th Cir. 2007) (collecting cases); *see United States v. Dunford,* 148 F.3d 385, 388 (4th Cir. 1998); *United States v. Richardson*, 439 F.3d 421, 422 (8th Cir. 2006) (per curiam); *United States v. Johnson,* 130 F.3d 1420, 1425 (10th Cir. 1997); *United States v. Winchester,* 916 F.2d 601, 605-06 (11th Cir.1990).

Ocegueda-Ruiz admittedly received concurrent sentences on Counts 21 and 22. The collateral consequences of multiplicitous convictions (including simply paying more than one special assessment) can be significant. *See Rutledge v. United States*, 517 U.S. 292, 302 (1996); *Ball v. United States*, 470 U.S. 856, 864-65 (1985); *Zalapa*, 509 F.3d at 1064-65.

This claim therefore survives prescreening review and will be addressed by separate order.

### C. Claim Three: Interpreter

Ocegueda-Ruiz claims that his trial attorney(s) provided ineffective assistance for failing to use an interpreter when discussing the case with him. Appellate counsel raised this issue in Ocegueda-Ruiz's direct appeal. (*See* Case No. 15-30158, Opening Br., Doc. 10 at 26-29; Memo Dispo., Doc. 830 at 5). The Ninth Circuit declined to address the issue, however, based on its conclusion that

"such claims are better resolved on collateral review, after the record has been more fully developed as to the specific conduct challenged." (Doc. 830 at 5.)

A claim for ineffective assistance in the context of interpretive services turns on whether the need for an interpreter "should have been obvious to competent counsel in this situation." *Gonzalez v. United States*, 33 F.3d 1047, 1051 (9th Cir. 1994). This inquiry should be based on the totality of the circumstances. These circumstances can include evidence as to counsel's knowledge of the defendant's language difficulty and whether the defendant informed counsel of his lack of understanding. *Id.*

Nothing from the record indicates that trial counsel retained an interpreter at any phase of the case. Counsel's use of an interpreter appears to be limited to an off-the-record communication during trial when they discussed whether Ocegueda-Ruiz wished to testify. (*See* Jury Trial Day 2 at 234.) The question turns on whether the record supports counsel's belief that Ocegueda-Ruiz could understand English. *Gonzalez*, 33 F.3d at 1051.

Evidence in the record indicates that Ocegueda-Ruiz was not proficient at English, especially in the context of understanding his defense. Ocegueda-Ruiz was born in Mexico and his primary language is Spanish. (See PSR, Doc. 750, at ¶¶ 37, 75.) An interpreter consistently was provided for all court proceedings, including his initial appearance, (*see* Min. Entry, Doc. 10), the final pretrial

conference and trial, (*see* Min. Entries, Docs. 514, 520), and sentencing, (*see* Min. Entry, Doc. 749). The Court also directed an interpreter be retained to translate Ocegueda-Ruiz's *pro se* written submissions, that he filed between trial and sentencing. (Docs. 708, 725, 729, 743, and 733 (translations)). And, in a letter Ocegueda-Ruiz sent to counsel after trial but before sentencing, he indicated that "[f]rom today forward I will communicate with you in Spanish to feel more comfortable and so that express [sic] myself accurately and in the manner that I want to say things." (Doc. 733 at 2 (translation).)

Trial testimony from the hotel desk clerk where Ocegueda-Ruiz checked in also indicates comprehension concerns. When asked to describe her interaction with Ocegueda-Ruiz the clerk stated: "We had quite a language barrier. Uhm, he was able to get to me that he wanted a room, and he paid, and that he was going to pay in cash. . . . [I]t was okay, but me trying to get his name from him, I really just wasn't getting it. And he had to hand over his passport to me so I could type it off there, because I couldn't – there was just too much of a language barrier for me to even get his name that he was saying and spelling." (Jury Trial Day 2 at 98.)

On the other hand, Ocegueda-Ruiz allegedly acted as an interpreter in the drug conspiracy. (*See* PSR, Doc. 750 at ¶¶ 24, 31.) His co-defendant, Martin Leland, testified during trial that Ocegueda-Ruiz spoke for co-defendant Josh Rodriguez when they were in Great Falls "[b]ecause Eduardo [Ocegueda-Ruiz] can

speak good English." (Jury Trial Day 1 at 120-21.) Leland further testified that he

"could . . . have a conversation in English with [Ocegueda-Ruiz]." (*Id.* at 121.)

Another co-defendant, Larry Griner, also testified that Ocegueda-Ruiz was

introduced as "an interpreter for Joshua Rodriguez." (Jury Trial Day 2 at 61.) The

agent from the Bureau of Alcohol, Firearms, and Tobacco that interviewed

Ocegueda-Ruiz testified at trial that he conducted the interview in English. (*Id.* at

165-66.) The government also presented three recorded phone calls at trial

between Ocegueda-Ruiz and two co-defendants that were conducted in English.

(*See* Exs. 52, 53, 54.) Trial testimony indicated, however, that many of the phone

calls monitored by law enforcement were in Spanish. (*See* Jury Trial Day 1 at 26

(DEA agent testifying that translations occurred as calls came in)).

Considering the foregoing, the only conclusion that can be drawn from the

present record is that Ocegueda-Ruiz preferred to communicate in Spanish.

Ocegueda-Ruiz's preference for Spanish stands distinct from whether competent

counsel should have known he struggled to understand English. An interpreter

should be used to assist a non-primary English speaker when his language skills

"are so deficient as to inhibit comprehension of the proceedings." *Gonzalez*, 33

F.3d at 1050 (quotations omitted); *see also* Court Reporters Act, 28 U.S.C § 1827.

In his supplemental filing, Ocegueda-Ruiz states that he "had several times

indicated to [his trial counsel] verbally and nonverbally the difficulties he was

having in understanding the English language and what counsel was discussing with him during their meetings and while reviewing the evidence and weighing possible options." (Doc. 859 at 3.) He also attaches a portion of the sentencing transcript as evidence that, when viewed in this light, could support his claim that he was not able to communicate effectively with counsel. (*See* Doc. 859-1.) He has alleged sufficient facts to support an inference that counsel's performance fell outside the wide range of reasonably professional assistance by not using an interpreter. *Strickland*, 466 U.S. at 687-88.

This determination does not represent the end of the inquiry. Ocegueda-Ruiz also must allege facts to support an inference that he suffered prejudice from counsel's unprofessional conduct. *Strickland*, 466 U.S. at 694. Ocegueda-Ruiz originally presented no evidence that counsel's failure impacted the outcome of the proceedings. He failed to identify any action that he would have taken differently had an interpreter been used. In his supplement, however, Ocegueda-Ruiz states that "had he understood what the evidence for or against him were [sic] and had a clear understanding that he would be facing a Life sentence for going to trial, due to the severity of a LIFE sentence, he would have took [sic] a plea and not proceeded to trial." (Doc. 859 at 2.) Ocegueda-Ruiz sufficiently has alleged potential prejudice. *See Lafler v. Cooper*, 566 U.S. 156, 174 (2012) (finding prejudice where "respondent has shown that but for counsel's deficient

performance there is a reasonable probability he and the trial court would have accepted the guilty plea").

This claim survives prescreening review and will be addressed by separate order.

### D. Claim Four: Trial Objections

Ocegueda-Ruiz alleges that his trial counsel provided ineffective assistance for failing to object at trial to the testimony of codefendant Martin Leland and to certain factual stipulations upon which the Court instructed the jury.

#### 1. Testimony of Martin Leland

Ocegueda-Ruiz insists counsel provided ineffective assistance when he failed to object to Martin Leland's testimony that Ocegueda-Ruiz spoke to him about killing a codefendant. Ocegueda-Ruiz further alleges that counsel should have requested a limiting instruction. As was the case with Ocegueda-Ruiz's interpreter claim, appellate counsel raised this argument in Ocegueda-Ruiz's direct appeal. (*See* Case No. 15-30158, Opening Brief, Doc. 10 at 29-34.) The Ninth Circuit declined to address it. (Doc. 830 at 5.)

During trial, Martin Leland described a conversation that he had with Ocegueda-Ruiz wherein Ocegueda-Ruiz expressed a desire to meet up with codefendant Corey Lambert to "take care of business or do whatever needed to be done. And they were talking about – you know – talking about maybe ending his

life." (Jury Trial Day 1 at 102.) Leland also testified that Ocegueda-Ruiz advised him that "in California if somebody owes you a bunch of money, you can pretty much almost beat them to death and throw some dope on them, and the cops won't investigate because it's drug related." (*Id.*) Leland stated that he advised Ocegueda-Ruiz that "[i]f you are really trying to kill somebody here, your business is over." (*Id.* at 102-03.) Trial counsel did not object.

In alleging that counsel provided ineffective assistance, Ocegueda-Ruiz faces two challenges. First, it is not clear that Leland's testimony regarding statements made by Ocegueda-Ruiz were inadmissible. The statements would qualify for a hearsay exception as Ocegueda-Ruiz was a party opponent. Fed. R. Evid. 801(d)(2). Counsel's potential objections would have been limited to relevancy, Fed. R. Evid. 401, or prejudice, Fed. R. Evid. 403. The Court possesses significant discretion under both standards. Leland's statements arguably were relevant to Ocegueda-Ruiz's involvement in the greater conspiracy, and, thereby, their probative value outweighed any prejudice. "Evidence introduced by the prosecution will often raise more than one inference, some permissible, some not; [courts] must rely on the jury to sort them out in light of the court's instructions. Only if there are *no* permissible inferences the jury may draw from the evidence can its admission violate due process." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991).

Second, an attorney's failure to object to admission of inadmissible evidence does not necessarily indicate ineffective assistance. *Morris v. State of Cal.*, 966 F.2d 448, 456 (9th Cir. 1991). A defendant seeking to prove ineffective assistance of counsel "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). For example, counsel may forego objection to avoid drawing attention to the specific testimony. In this context, counsel may not have even been aware that the conversation about Corey Lambert was headed that direction. Counsel would not have had an opportunity to object until after the testimony had been given. "And whether to object to damaging testimony at the risk of drawing the jury's attention to it is a tactical decision." *Gresser v. Franke*, 628 Fed. App'x 960, 963 (9th Cir. 2015). This tactical decision would not constitute ineffective assistance as long as counsel considered and made a reasoned choice. Failure to request a limiting instruction or move to strike the testimony was likely a tactical choice.

Ocegueda-Ruiz also must show prejudice from counsel's failure to object. A defendant suffers prejudice from his counsel's deficient performance when he "show[s] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Two relevant cautionary instructions undermined the

importance of Leland's statement. First, the Court instructed the jury to examine Leland's testimony "with greater caution than that of other witnesses." (*See* Final Instr. No. 24, Doc. 524 at 29.) Second, the Court specifically instructed the jury on statements made by the defendant and told them to "consider all the evidence about the statement, including the circumstances under which the defendant may have made it." (Final Instr. No. 26, Doc. 524 at 31.)

On the other hand Ocegueda-Ruiz's alleged tendency toward violence did not seem particularly relevant to the charges. Leland made clear that Ocegueda-Ruiz possessed firearms. Leland discussed no other direct threats. The prejudicial testimony represented only one conversation among a host of other conversations. The jury had to weigh this conversation against the fact that Ocegueda-Ruiz's later conversation with Corey Lambert occurred without violence and with Leland present. (Jury Trial Day 1 at 119.) The jury had ample opportunity to reassess Ocegueda-Ruiz's tendency toward violence based on his actual conduct. Finally, the balance of the evidence presented against Ocegueda-Ruiz made an acquittal unlikely. No reasonable probability exists that, but for Leland's prejudicial testimony, the outcome of Ocegueda-Ruiz's trial would have been different.

## 2. Stipulations

The parties stipulated to three facts on which the Court instructed the jury, both as part of the preliminary instructions, (Trial Day 1 at 14-16 (preliminary

instructions)), and as part of the final instructions, (Jury Trial Day 2 at 275-76 (final instructions); Final Jury Instr. No. 31, Doc. 524 at 26). Those stipulations included the following items: (1) that Ocegueda-Ruiz had a prior felony conviction; (2) that Ocegueda-Ruiz was an illegal alien; and (3) that the chain of custody for Exhibits 1-8, 10-28, 33-38, 57-58, and 94-97 had been established. Ocegueda-Ruiz argues that it was unreasonable for counsel to allow those stipulations to be included in the jury instructions.[6] According to Ocegueda-Ruiz, his counsel should have required the government to present evidence of these items as part of its case in chief.

Ocegueda-Ruiz relies on *United States v. Pratt*, in arguing that factual stipulations represent evidence, distinct from jury instructions, and should be conveyed to the jury during the presentation of evidence. *See* 496 F.3d 124, 128-30 (1st Cir. 2007), *vacated and remanded on other grounds*, 129 S. Ct. 991 (2009). The *Pratt* court noted, however, that such an error is merely "technical" and "does not remotely warrant reversal of [the defendant's] conviction." The defendant had conceded the facts addressed in the stipulation. *Id.* at 130. And, here, unlike the

---

[6] Ocegueda-Ruiz does not appear to argue that counsel provided ineffective assistance for entering into these stipulations in the first instance. To the extent his motion can be construed as such, it is unpersuasive given the drug and removal history. *See* PSR, Doc. 750 at ¶¶ 56-58, 64-73. The United States would have been allowed to introduce were it not for the stipulation. *See Old Chief v. United States*, 519 U.S. 172, 174 (1995).

case in *Pratt*, the Court presented the stipulations to the jury before the beginning of the proof in the form of preliminary instructions. (*See* Trial Day 1 at 14-16.) Thus even assuming Ocegueda-Ruiz was able to show counsel's failure to object to the presentation of these stipulations during the final jury instructions was ineffective he cannot show that he suffered prejudice.

Ocegueda-Ruiz further argues that including the stipulation to the chain of custody of certain exhibits in the instructions "bolstered the government's exhibits" and, as a result, "the court effectively determined the verdict on those corresponding elements creating a mandatory presumption." (Doc. 839-1 at 11.) Ocegueda-Ruiz overstates the instruction. The third stipulation read: "The parties agree that Exhibits 1-8, 10-28, 33-38, 57-58, and 94-97 have remained in the same condition throughout the case. No further evidence needs to be admitted to *establish the chain of custody* for Exhibits 1-8, 10-28, 33-38, 57-58, and 94-97." (Final Jury Instr. No. 31, Doc. 524 at 36 (emphasis added).) Instruction 31 then concludes: "You should treat these facts as having been proved." (*Id.*) The stipulation only established the chain of custody for those exhibits, it did not, as Ocegueda-Ruiz argues, bind the jury to those exhibits or require that they be used in the jury's determination of the case. To the contrary, as Ocegueda-Ruiz recognizes, counsel challenged the validity of some of these exhibits in his cross-examination. (*See, e.g.*, Jury Trial Day 2 at 222 (discussing a report that undercut

the forensic science of fingerprints).)

Ocegueda-Ruiz's fourth claim is denied.

**E. Claim Five: Rule 29**

Finally, Ocegueda-Ruiz argues that trial counsel provided ineffective assistance for failing to challenge the sufficiency of the evidence as to "interstate commerce" elements of Counts 21 and 22 in his oral Rule 29 motion. Defense counsel limited the Rule 29 motion to Counts 1 and 5. (Jury Trial Day 2 at 226.) The Court denied the motion on the record. (*Id.* at 233.) Ocegueda-Ruiz further argues that appellate counsel provided ineffective assistance for failing to raise this same insufficiency challenge on appeal.

To meet the "interstate commerce" element of both charges under 18 U.S.C. § 922(g), the government called Agent Chad Foreman of the Bureau of Alcohol, Firearms, and Tobacco. He testified that the two firearms at issue "were manufactured in the Republic of Croatia, and they were imported into Genesco (phonetic), Indiana or Pershing, Illinois." (Jury Trial Day 2 at 168.) Agent Foreman further testified that it was his opinion that those firearms had traveled in interstate commerce. (*Id.*) In cross-examination, defense counsel asked Agent Foreman about ownership of the firearms and he responded "I recall a trace being performed, but the records that I have, I didn't do the trace, myself." (*Id.*) When defense counsel followed up, Agent Foreman indicated that someone else had

performed the trace.  (*Id.*)

Ocegueda-Ruiz argues that defense counsel should have challenged the sufficiency of the evidence as to this point because Agent Foreman's testimony did not establish that the firearms actually had travelled in interstate commerce as to show how they got to Montana.  (*See* Doc. 839-1 at 13-14.)  Ocegueda-Ruiz emphasizes the jury's note on this issue. The jury asked the following question: "Please explain in Instruction 15 and 17 the reference to interstate commerce and the relevance of the firearms being transported in interstate commerce."  (Jury Note, Doc. 525 at 2; Jury Trial Day 2 at 312-13.)

Despite the jury's potential confusion as to this element, Ocegueda-Ruiz's argument lacks merit.  The required nexus with interstate commerce is a "minimal" one. The nexus simply requires that "the firearm have been, at some time, in interstate commerce." *Scarborough v. United States*, 431 U.S. 563, 575 (1963) (addressing the predecessor to § 922(g)); *United States v. Hanna*, 55 F.3d 1456, 1462 (9th Cir. 1995).  The government presented evidence that the gun had been manufactured in Croatia and entered the United States in some state other than Montana.  By necessity those firearms would have had to travel interstate to be found in Montana.  *See United States v. McGee*, 2013 WL 2645211, at *4 (N.D. Cal. June 12, 2013) (holding that interstate commerce element met where evidence was that firearm was not manufactured in California but found in California).  The

failure to make a Rule 29 argument does not constitute ineffective assistance, especially where the crimes charged "were supported by sufficient evidence." *United States v. Feldman*, 853 F.2d 648, 665-66 (9th Cir. 1988).

Likewise, appellate counsel did not provide ineffective assistance for failing to raise this issue. Even accepting the proposition that the argument is not frivolous, appellate counsel need not raise every non-frivolous claim, "but rather, may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

Ocegueda-Ruiz's fifth claim is denied.

## IV. Conclusion

Accordingly, IT IS ORDERED that Ocegueda-Ruiz's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 839) is DENIED as to Claims One, Four, and Five. These claims will not be further considered. His double jeopardy and interpreter claims (Claims Two and Three) are addressed by separate order.

DATED this 18th day of April, 2018.

Brian Morris
United States District Court Judge