IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 14-96-GF-BMM-14 |
| Plaintiff/Respondent, | |
| vs. | ORDER |
| EDUARDO OCEGUEDA-RUIZ, | |
| Defendant/Movant. | |

This case comes before the Court on Defendant Ocegueda-Ruiz's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255. Ocegueda is a federal prisoner proceeding pro se.

## I. Preliminary Review

Before the United States is required to respond, the Court must determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts. A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolas*") (Schroeder, C.J., concurring)

1

(referring to Rules Governing § 2254 Cases). The Court should "eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

## II. Background

In 2015, a jury convicted Ocegueda of the following offenses:

| | |
|---|---|
| Count 1 | conspiracy to distribute methamphetamine and possess it with intent to distribute it, a violation of 21 U.S.C. § 846; |
| Count 5 | possession of methamphetamine with intent to distribute it, a violation of 21 U.S.C. § 841(a)(1); |
| Count 20 | possession of a firearm in furtherance of drug trafficking, a violation of 18 U.S.C. § 924(c); |
| Count 21 | being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1); and |
| Count 22 | being an illegal alien in possession of a firearm, a violation of 18 U.S.C. § 922(g)(5). |

*See* Verdict (Doc. 526) at 1–4; Indictment (Doc. 26) at 4–5, 6, 9, 12–13.

At the time of sentencing in June 2015, the quantity of methamphetamine and Ocegueda's prior convictions triggered a mandatory life sentence on Counts 1 and 5. *See* 21 U.S.C. §§ 841(b)(1)(A)(viii) (eff. Aug. 3, 2010); § 851 Information (Doc. 408). Ocegueda was sentenced to life in prison on Counts 1 and 5 and 120

months on Counts 21 and 22, all to run concurrently, and sixty months on Count 20, consecutive to the other counts. *See* Judgement (Doc. 740) at 3. Ocegueda appealed. The Court of Appeals affirmed his conviction and sentence. *See* Mem. (Doc. 830), *United States v. Ocegueda*, No. 15-30158 (9th Cir. Oct. 17, 2016).

On April 11, 2017, Ocegueda moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. *See* Mot. § 2255 (Doc. 839). Most of his claims were denied, but on December 10, 2019, the Court granted Ocegueda's double jeopardy claim regarding Counts 21 and 22. The parties agreed the United States would withdraw its § 851 Information. *See* Sentencing Agreement (Doc. 925); Order (Doc. 926).

On February 4, 2020, Ocegueda was resentenced to 210 months in prison, consisting of 150 months on Counts 1 and 5, 120 months on Counts 21 and 22, all to run concurrently, and 60 months on Count 20, to run consecutively. *See* Am. Judgment (Doc. 937). Ocegueda did not appeal.

On July 13, 2020, Ocegueda timely filed his current § 2255 motion. As a new judgment was entered, his second § 2255 motion need not meet the stringent restrictions of 28 U.S.C. §§ 2255(h) and 2244(b). *See Magwood v. Patterson*, 561 U.S. 320, 331 (2010); *United States v. Buenrostro*, 895 F.3d 1160, 1165–66 (9th Cir. 2018); *compare, e.g., Sherrod v. United States*, 858 F.3d 1240, 1241–42 (9th Cir. 2017).

### III. Claims and Analysis

Ocegueda makes two claims, both alleging that counsel was ineffective. These claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). At this stage of the proceedings, Ocegueda must allege facts sufficient to support an inference (1) that counsel's performance fell outside the wide range of reasonable professional assistance, *id.* at 687-88, and (2) that there is a reasonable probability that, but for counsel's unprofessional performance, the result of the proceeding would have been different, *id.* at 694.

The agreement resolving Ocegueda's first § 2255 motion waived his right to claim "ineffective assistance of his trial counsel or counsel in his original appeal." *See* Sentencing Agreement (Doc. 925-2) at 4 ¶ 4. Both of his claims allege ineffective assistance by the attorney who represented him at resentencing.

#### A. Sufficiency of the Evidence on Count 20

Ocegueda contends that counsel did not understand the nature of the evidence that would support a conviction for violation of 18 U.S.C. § 924(c)(1)(A) and so unreasonably advised him to agree to be resentenced on Count 20. *See* Mot. § 2255 (Doc. 979) at 4–5.[1] One or more procedural defenses might apply, but the

---

[1] Ocegueda refers to the sentencing agreement as a plea agreement. Ocegueda was convicted by a jury. The Court did not conduct a plea colloquy under Federal Rule of Criminal Procedure 11 and does not consider the sentencing agreement to be the equivalent of a plea agreement.

Court will address the claim on the merits.

Count 20 charged Ocegueda with possessing, on September 25 and 26, 2014, a Springfield 9-mm semiautomatic pistol or a Springfield .40-caliber semiautomatic pistol in furtherance of the drug trafficking crimes charged in Counts 1 and 5. *See* Jury Instrs. Nos. 12–13 (Doc. 524) at 14–16; Indictment (Doc. 26) at 12. The jury was also instructed on aiding and abetting. *See* Jury Instr. No. 14 (Doc. 524) at 17–18; 18 U.S.C. § 2; Indictment at 12. "A conviction for possession of a firearm 'in furtherance of' a drug trafficking offense . . . requires proof that the defendant possessed the weapon to promote or facilitate the underlying crime." *United States v. Krause*, 370 F.3d 965, 967 (9th Cir. 2004).

Ocegueda argues that the firearms were not sufficiently connected with the crimes alleged against him to meet the "in furtherance" element. He does not allow for the inferences the jury was entitled to draw from the testimony of a co-defendant Martin Leland.

Leland testified that he met Ocegueda in early September 2014. At the time, Leland owed another co-defendant, Joshua Rodriguez, a little money, but not a lot. Rodriguez introduced Leland to Ocegueda when he stopped by Leland's house, uninvited, and then left Ocegueda there for six or eight hours. Ocegueda talked to Leland about staying in the drug business, about things that happen to people who fail to pay, and about the many firearms in Leland's house. 1 Trial Tr. (Doc. 795)

5

at 96:17–104:15.

A few weeks after Ocegueda and Leland met, Leland lost money he owed Rodriguez in a robbery. Ocegueda directed Leland to meet him and Rodriguez in Butte. *See id*. at 125:12–17. Leland and Ocegueda had a conversation in Butte about firearms. Leland told Ocegueda that he had two Springfield pistols he "would give up." *Id*. at 147:6–7. When Leland arrived back home, Ocegueda called him and told him, "Bring the thing." Based on the Butte conversation, Leland knew Ocegueda wanted the two Springfields. *See id.* at 146:18–147:15.

Leland went to the parking lot at Fiesta en Jalisco restaurant in Great Falls. Ocegueda fronted him four ounces of methamphetamine. Leland gave Ocegueda the guns "just as a, like, sorry for losing your ten grand, and crystal meth was going to be sold and paid back." 1 Trial Tr. at 147:19–150:1; *see also, e.g.*, 1 Trial Tr. at 122:17–123:10, 127:7–128:2. They parted company. Shortly afterward, officers arrested Ocegueda as he walked back to his hotel room with one Springfield in his waistband and the other in one of his takeout bags. Officers later found about five pounds of methamphetamine with Ocegueda's fingerprints on the inside of the packaging in his hotel room. *See* 2 Trial Tr. (Doc. 796) at 114:8–115:20, 136:5–138:14, 140:7–21, 181:3–14, 216:1–217:14.

This evidence supports various inferences. A reasonable juror could have inferred that Ocegueda wanted the firearms to protect himself and his stash.

Possibly Leland was being cagey and the two firearms functioned as down payment or collateral for the four ounces of methamphetamine. A reasonable juror could have thought that the guns supported at least partial forgiveness of the debt created by the robbery. A reasonable juror could have thought *Leland* possessed the firearms in furtherance of the Count 1 conspiracy and the Count 5 transaction, because he gave them to Ocegueda—at Ocegueda's direction—as oil to soothe troubled waters and an expression of faith in their future dealings. Other interpretations of this evidence may also be possible. Jurors are not required to agree "which of several possible sets of underlying brute facts make up a particular element." *Richardson v. United States*, 526 U.S. 813, 817 (1999). The jury only had to decide whether Ocegueda possessed a firearm in furtherance of a drug trafficking crime. All of these inferences fit the bill. Reasonable jurors could have found Ocegueda guilty, beyond reasonable doubt, on Count 20, as a principal or on an aiding-and-abetting theory.

Ocegueda's allegations do not support an inference that counsel gave him bad advice or prejudiced him. Neither prong of the *Strickland* test is met. This claim is denied.

### B. Failure to Appeal

Ocegueda claims that he told counsel to appeal, but counsel "refused," and

Ocegueda "wrote him letters and talked to him about it."[2] Mot. § 2255 (Doc. 979) at 14.

This claim could be addressed through further proceedings, possibly including appointment of counsel and/or an evidentiary hearing. *See, e.g., Peguero v. United States*, 526 U.S. 23, 28 (1999). The United States could "choose not to oppose" the claim, allow the Amended Judgment to be vacated and reentered, and let Ocegueda take his appeal. *See, e.g., United States v. Sandoval-Lopez*, 409 F.3d 1193, 1198–99 (9th Cir. 2005) (suggesting this course of action).

The Court will allow the United States to decide after it considers the next issue.

### C. Amended Judgment

As explained above, the Court granted Ocegueda's first motion under § 2255 because the parties agreed "that 18 U.S.C. § 922(g) may only sustain a single conviction for a single incident of possession." Sentencing Agreement (Doc. 925-2) at 3 ¶ 1. Counts 21 and 22 alleged that Ocegueda possessed the same two firearms on the same day, September 26, 2014. *See* Indictment (Doc. 26) at 13. The agreement cited *United States v. Mavromatis*, 769 F.3d 1194, 1195 (9th Cir.

---

[2] Ocegueda also says he "wrote the court from jail asking to file Notice [of appeal] but it was never acknowledged by the court." Mot. § 2255 at 14–15. Had the clerk received a notice of appeal, it would have been filed. None was received.

2014). In that case, the court observed, "The view of the Department of Justice is that Congress intended not to establish multiple offenses when the same incident of possession violates two subsections of § 922(g)."

In response to the Sentencing Agreement, the Court granted the double jeopardy claim and vacated Count 22 of the original judgment. *See* Order (Doc. 926) at 2 ¶ 1; *see also, e.g.*, *United States v. Schales*, 546 F.3d 965, 980 (9th Cir. 2008) ("If a double jeopardy violation occurs, 'the only remedy consistent with the congressional intent is for the District Court, where the sentencing responsibility resides, to exercise its discretion to vacate one of the underlying convictions.'") (quoting *Ball v. United States*, 470 U.S. 856, 864 (1985)).

Yet, on February 4, 2020, the Court resentenced Ocegueda on Counts 1, 5, 20, 21—and 22. *See* Am. Judgment (Doc. 937) at 2, 3, 4. Neither the United States nor Ocegueda objected. *See* U.S. Sentencing Mem. (Doc. 933); Ocegueda Sentencing Mem. (Doc. 934); Supp. Presentence Report (Doc. 939) at 19.

The United States must show cause why the Amended Judgment is not invalid on double jeopardy grounds.

## IV. Conclusion

Ocegueda's claim concerning Count 20 lacks merit. His claim that counsel refused to file a notice of appeal might have merit. It appears, however, that the Amended Judgment must be vacated and a new judgment entered. If that is the

case, the most efficient path forward may be to grant the second claim, vacate the Amended Judgment, and enter a Second Amended Judgment resolving the apparent double-jeopardy issue and enabling Ocegueda to pursue the appeal he claims he should have had.

Accordingly, IT IS ORDERED:

1. Ocegueda's first claim is DENIED. Ruling on the second claim is RESERVED.

2. On or before **November 20, 2020,** the United States must show cause why the Amended Judgment is not invalid on double jeopardy grounds and must explain how it wishes to proceed on Ocegueda's second claim for relief.

3. Ocegueda may reply within 14 days of the United States' response.

DATED this 30th day of October, 2020.

_____
Brian Morris, Chief District Judge
United States District Court